No. 38,501

STATE OF KANSAS, *Appellee*, v. JAMES H. PHILLIPS, alias Arthur Osborne Phillips, *Appellant*.

(241 P. 2d 503)

Opinion filed March 8, 1952.

*Don Wyman*, of Hutchinson, argued the cause and *Duane Roberts*, of Hutchinson, was with him on the briefs for the appellant.

*John R. Alden*, of Hutchinson, argued the cause and *Harold R. Fatzer*, attorney general, and *Fred C. Preble*, of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action defendant was convicted of perjury in three counts. He has appealed.

A short explanatory statement will be helpful. Defendant and his wife were sued for damages growing out of an automobile collision. They filed answers and cross petitions. They asked for damages against the plaintiff. In his cross petition he alleged that he was by education, training and profession a physician, surgeon and

chemical engineer earning prior to his injuries and capable of earning $500 per month, all of which he had lost by such injuries.

On the trial he took the stand and testified that he was a medical doctor by virtue of his graduation from the medical school of Tennessee University and that he was a graduate of Pennsylvania State College in chemical engineering. On cross-examination he admitted that he was Arthur Osborne Phillips; that he had never been to the two universities; that his entire college work consisted of two courses in bacteriology at the University of Buffalo. The civil case was then dismissed with prejudice. Three days later he was arrested and charged with perjury in three counts.

The first count was that at the trial of the civil action he testified falsely by swearing that his name was James H. Phillips when as a matter of fact it was Arthur Osborne Phillips.

The second count was that he testified falsely by swearing that he was a graduate chemical engineer; that he graduated from Pennsylvania State College, which was false.

The third count was that he testified falsely by swearing that he was a graduate of the School of Medicine of the University of Tennessee, which was false.

At the start of this trial the state introduced into evidence the court files in the civil case. After some objection by counsel for the defendant counsel for the state read from defendant's cross petition the following:

"'That this defendant is, by education, training, and profession, a physician and surgeon and chemical engineer, earning prior to said injuries, and capable of earning, $500.00 per month; all of which he has lost by reason of such injuries.'"

Attention of the jury was also called to the fact that in the title of the case defendant's name was listed as James H. Phillips.

A deputy clerk of the court then testified that she administered the oath to defendant in the civil action.

The court reporter in the civil action then took the stand. He proceeded to read excerpts from defendant's testimony in the civil action. This testimony showed that he testified at first his name was James H. Phillips. Subsequently without leaving the stand he testified on cross-examination that his name actually was Arthur Osborne Phillips. The reporter further testified as follows, detailing the testimony of defendant in the Bloom case:

"'Q. Are you a graduate engineer? A. Chemical.

" 'Q. I don't understand this engineering situation. Are you a graduate chemical engineer? A. That is right.

" 'Q. And from what school are you a graduate? A. Penn State College.' "

Subsequently after cross-examination without leaving the stand he testified:

" 'Q. Did you or did you not get a degree from Penn State? A. No, I didn't get a degree.' "

The reporter further testified:

" 'Q. Well, what school of medicine are you from? A. University of Tennessee.

" 'Q. Did you graduate? A. June 8, 1916.

" 'Q. June 8, 1916? A. Yes.' "

Subsequently upon cross-examination and without leaving the stand he testified as follows:

" 'Q. Do you claim to this jury that you ever graduated from any medical school? A. No.

" 'Q. Nor that you ever got any diploma with the right to practice medicine, other than getting one falsely under a false affidavit? A. No.' "

The reporter testified no further. There was no cross-examination and counsel for the defendant objected to the admission of the reporter's testimony and asked that it be stricken from the record. The objection and motion were overruled. There was no further evidence on the part of the state.

Counsel for defendant demurred to the state's evidence on the ground it did not show that the matter about which the state claimed defendant testified falsely was material in the civil action and that there had been no corroboration of the alleged perjured testimony beyond the introduction of the transcript in the civil case and that defendant had retracted every statement he had made under oath which might have been construed to be perjury. This demurrer was overruled. Counsel then moved for a directed verdict on the same ground. This motion was overruled.

The jury found the defendant guilty on all three counts. The motion for a new trial was on account of illegal testimony permitting the court reporter to testify, verdict was not sustained by the evidence in not giving requested instructions, in instructing the jury that the facts alleged to have been testified to falsely by the defendant were material, in overruling defendant's demurrer to the state's evidence, in overruling defendant's request for a directed verdict, the verdict was the result of passion and prejudice, and in overruling defendant's objections to certain comments made

by the county attorney in his argument to the jury. This motion for a new trial was overruled.

The defendant appealed from the overruling of his demurrer, the overruling of his motion for a directed verdict and the order overruling his motion for a new trial.

His specifications of error follow his notice of appeal.

Defendant argues first that his motion for a directed verdict should have been sustained because if he made any false statements under oath he recanted and told the truth before he left the stand.

He next argues for the same result because the state did not prove that any false statement he made was on a material issue in the Bloom case.

In the third place, he argues that his motion for a directed verdict should have been sustained because there was insufficient corroboration of the falsity of his statements. On account of the conclusion we have reached as to the above question it will not be necessary for us to consider the first two.

We start the consideration of this question with the law well settled as far as this jurisdiction is concerned. Perjury is a little different from other crimes in the quantum of proof required. The *State v. Gobin*, 134 Kan. 532, 7 P. 2d 57, was a case where Gobin had been charged with perjury because he swore under oath that a certain party had sold him liquor and this affidavit had been used for the purpose of causing the county attorney to bring a prosecution when as a matter of fact this affidavit was false. At the trial the man about whom he had made the affidavit swore he had never sold any liquor to Gobin. This was all the evidence there was as to the falsity of the affidavit. Ordinarily we would have held this to be sufficient since the weight of the evidence is for the jury and one witness is enough if the jury believes him. We held, however:

"Two witnesses or one witness and corroborating circumstances are necessary to establish the fact of perjury, and therefore the uncorroborated testimony of one witness as to the falsity of a sworn statement is not enough to support a conviction for perjury."

We wrote an exhaustive opinion in which we reviewed and approved authorities from other jurisdictions. For the purpose of this opinion the rule quoted in the Gobin opinion from 48 C. J. 900 is as good as any. It is as follows:

" 'A statement of accused, directly contradicting that upon which the perjury is assigned, is not sufficient evidence of the falsity of the latter, but other additional extrinsic evidence is necessary to establish its falsity.

" 'It was formerly held that a conviction for perjury could not be had except upon the direct testimony of two witnesses.

" 'The early rule has been repudiated, and now a charge of perjury may be sustained, either by the testimony of two witnesses or by that of one witness and corroborating circumstances.' "

The state recognizes such to be the rule, indeed cites and relies on *Wright v. State*, 30 Okla. Cr. 425, 236 Pac. 633, where the court said:

"To support a conviction for perjury, it is not essential that there be two witnesses to the falsity of accused's testimony. It is sufficient if there be direct testimony of one witness and corroborating circumstances, and taken as a whole of such conclusive character as to exclude every other reasonable hypothesis, except that of defendant's guilt."

Our question appears to be whether there were corroborating circumstances sufficient to establish the falsity of defendant's testimony at the Bloom trial. When we examine the record critically we find there was no witness at all as to the truth or falsity of that testimony. The clerk of the court testified that the oath was administered. The court reporter then testified as to what the testimony of defendant was, nothing more. He did not testify that this testimony was false. He could not do so. He knew nothing of it other than what he heard from defendant himself. The result is, we have some corroborating circumstances as to the falsity of the testimony but no witness at all as to its falsity. The opinions we have examined all generally hold that one witness and corroborating circumstances is sufficient. We find none, however, where nothing whatever as to the falsity is proved by the state other than circumstances.

The state asks us to consider the contradictory statements of defendant when he was on the witness stand in the Bloom case, his interest in the outcome of the Bloom case and the fact that the Bloom case was dismissed after defendant had testified. These are all corroborating circumstances but there is no witness as to the falsity. We said in *State v. Gobin*, supra:

"We think this rule of requiring either two witnesses or one witness and corroborating circumstances to establish the fact of perjury is not unjust or unreasonable, even if it is the single exception of the kind, and that we should, in harmony with most of the other jurisdictions of this country, continue to recognize it as the rule in this jurisdiction."

We still adhere to that rule.

The judgment of the trial court is reversed with directions to grant defendant a new trial.

HARVEY, C. J., THIELE and WEDELL, JJ., dissent.