No. 33,336

THE STATE OF KANSAS, *Appellee*, v. DON BUNDY, *Appellant*.

(75 P. 2d 236)

filed January 29, 1938.                                                                 Opinion

*T. W. Bell,* of Leavenworth, and *Karl V. Shawver,* of Paola, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Oliver D. Rinehart,* county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this case the defendant was convicted of murder in the first degree, and appeals.

The affair grew out of the attempt of some young men to steal a slot machine. The deceased was a man by the name of Hoag, who operated a filling station and a small store on the outskirts of Osawatomie. The dwelling house in which he lived with his sister was close by the filling station and store. Jack Brunts, Edward Higgins, Don Bundy and Alvie Baffrey were all young men who lived in Osawatomie. There is no dispute in the record but that Brunts and Higgins entered the residence of Hoag on the night in question and at the point of a gun stole a small amount of money, and started to steal a slot machine. Hoag entered the house while they were carrying the machine out. Brunts shot Hoag with a

pistol. He died later that night. Brunts was convicted of murder in the first degree. He was under sentence at the time of this trial but was held in jail at Paola so that he could testify for the state. Higgins pleaded guilty to murder in the second degree. He, too, was held in jail so that he could testify for the state. As far as this record discloses the prosecution of Baffrey had not been disposed of when this case was tried.

The theory upon which the prosecution of Bundy was conducted was that Higgins, Brunts, Baffrey and Bundy all counseled, aided and abetted in the commission of a felony, and in the course of the attempt to perpetrate this felony Hoag was murdered. The determining element in this prosecution, then, was the part played by Bundy in planning the stealing of the slot machine and his part in the actual perpetration of this felony.

We shall discuss the points argued by defendant in the order in which they are discussed in his brief. He argues first that it was error for the trial court to overrule his plea in abatement. This plea was based on the fact that an amended information was filed and that defendant did not have any preliminary hearing on the charge set out in that amended information. The argument is that there was no allegation in the warrant upon which the preliminary was had of any "malice aforethought" nor that the killing of Hoag was done with steel bullets or that there was a conspiracy to rob at the dwelling house of Hoag, but instead it was alleged in the warrant that the conspiracy was to rob at the filling station.

The objections to the amended information are not good. The amendments were made before the defendant was required to plead. Under such circumstances it was the right of the state to make the amendments referred to. (See G. S. 1935, 62-808; also, *State v. Morris*, 131 Kan. 282, 291 Pac. 742.) Furthermore, courts of our state have been commanded by the statutes not to quash or set aside informations for defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits. (G. S. 1935, 62-1011.) The matters pointed out in this information fall far short of prejudicing the substantial rights of the defendant.

Defendant next argues that the court committed error in admitting the testimony of one Martin. This man lived in Osawatomie and knew all the parties. He was first permitted to testify that as he was going downtown one night Bundy asked him if he wanted to go with him to get a slot machine, and he asked him "Where?"

and he said, "Down to Walter Hoag's," and Bundy told him "he had a car and a gun," and he said "when he went after them he hysted them and told them he would take it." He also was permitted to testify that Bundy told him the evening of the shooting of Hoag that he had a gun and a car.

The objection of the defendant to the admission of this testimony is that it apparently makes Martin one of the conspirators, and no information had been filed against him. In the first place this testimony alone does not make Martin one of the conspirators, and if it did do so the defendant could not tell the prosecuting officers whether or not he should be tried. The fact that he might have been informed against in this prosecution and the prosecuting officer saw fit for some reason not to proceed against him does not affect the admissibility of incriminating statements made to him by defendant. Such statements are admissible the same as a statement made by him to any other individual.

Martin was next permitted to testify as to a conversation he had with Jack Brunts the evening of the killing. He testified that Brunts said "he was going after a slot machine"; that he, Martin, said he did not care anything about it, and that Brunts said he was going down to Hoag's, and he had seen Don (meaning Bundy). This witness was also permitted to testify about a conversation that evening between himself and Higgins and Brunts. This testimony was that Higgins came across the street and Brunts asked Martin if it would be all right to put Higgins in and Martin said he did not care what he did; that they wanted him to watch the front end and that he told them he would because he was afraid of Higgins. Defendant objected to this testimony on the ground that it was about statements of a coconspirator to a third person not in the presence of defendant and was therefore hearsay. This objection is not good. At this stage of the trial there had already been enough evidence introduced to prove a prima facie case of conspiracy to rob. In that case any statement of a coconspirator otherwise competent was proper whether made in the presence of the defendant or not. (See *State v. Pyle*, 143 Kan. 772, 57 P. 2d 93; *State v. Mullins*, 95 Kan. 280, 147 Pac. 828; *State v. Harding*, 142 Kan. 347, 46 P. 2d 617; *State v. Emory*, 116 Kan. 381, 226 Pac. 803, and *State v. Richmond*, 96 Kan. 600, 152 Pac. 644.)

What has been said with reference to the testimony of Martin as to conversations had by him with Brunts applies with equal force

to testimony of several officers of the law as to what was said to them by different members of the conspiracy. These conversations, all taken together, tended to establish a prima facie case against defendant.

Defendant next argues that the evidence of Eva M. Davis was incompetent and hearsay. This witness was the sister of Hoag. She testified about Brunts and Higgins coming to the house, forcing her to open the door and let them in, starting to carry out the slot machine and when Hoag came in the room, opening fire on him with a pistol. We are unable to find any reason why it should not have been admitted.

The evidence of the state, taken as a whole, established a prima facie case that these four young men made up a plan whereby Brunts and Higgins were to go down to the residence of Hoag to steal a slot machine and Bundy and Baffrey were to wait near by with a car ready to haul the machine away and were to open it so as to get the money it was supposed to contain; that Brunts and Higgins did go to the house; and Bundy and Baffrey did wait; that in the perpetration of the robbery of Hoag's house he was murdered by Brunts. Under such circumstances this established a prima facie case of murder in the first degree against Bundy. Defendant argues this appeal as though it were necessary for the state to establish that Bundy and Baffrey conspired with Brunts and Higgins to murder Hoag. Such is not the case. If they all four conspired to commit the felony of robbery, and in the attempt to perpetrate the felony Hoag was murdered, then all four are guilty of murder in the first degree. (See *State v. Jella,* 132 Kan. 509, 296 Pac. 350, and cases cited; also, *State v. Loar,* 116 Kan. 485; also, *State v. Roselli,* 109 Kan. 33, 198 Pac. 195.)

The defendant has but very little to complain of as to the application of this rule here, in view of the fact that the evidence showed that a few minutes before the murder he furnished Brunts the gun with which the murder was committed.

Defendant makes various complaints about the instructions. We have examined these instructions and have concluded that they correctly stated the law according to the theory of the state, which was a proper one.

Other errors urged by defendant have been considered and are held to be without merit.

The judgment of the trial court is affirmed.